

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Miscellaneous proceeding

Earlene Lofton

v.

Andrew S. Natsios,
Direct US Agency for International
Development

CASE NUMBER  1:06MS00444

JUDGE: Gladys Kessler

DECK TYPE: Miscellanous

DATE STAMP: 10/12/2006

## PETITION TO OVERTURN REFUSAL TO PRODUCE KARLA YEAKLE OR IN THE ALTERNATIVE A WRIT DIRECTING THE USAID HEAD TO PRODUCE MS. YEAKLE FOR TRIAL

Earlene Lofton, petitioner herein, moves for this honorable court, pursuant to the

Administrative Procedures Act, and/or under this court's authority to issue writs directing federal

officials to perform their duties, to compel the attendance of one Karla Yeakle, a federal

employee, to testify at a trial scheduled to take place on Monday, October 30 2006, in DC

Superior Court. Ms. Lofton makes this request because she requested such attendance from the

USAID, which request was denied in a decision that was arbitrary and capricious. As such, and

because the statute permitting federal agencies to limit production of such testimony makes it

clear public information should not be withheld, a mandamus should issue directing the head of

USAID to produce Ms. Yeakle for trial.

In support of this petition, Ms. Lofton states as follows:

1.      In 98-Cv- 5629, in DC Superior Court, Ms. Lofton is suing the law firm of Kator Scott

        (K&S) , alleging malpractice, based on the facts set forth below:

2.    In 1994, Ms. Lofton was an employee of the US Agency for International Development

(US AID). In that year Ms. Lofton was discharged for cause.

3.    Ms. Lofton retained K&S to contest the discharge before the US Merit System Protection

Board.

4.    In March 1995, a K&S attorney told Ms. Lofton the government would let her "retire".

The full implications of this term were that the government would permit Ms. Lofton to

obtain immediate retirement benefits, including medical insurance. If Ms. Lofton lost the

appeal, she would not be eligible for retirement benefits until age 62 (2009) and would

never be eligible for federal medical insurance benefits.

5.    Ms. Lofton alleges she did not understand the full implications of the offer, told the

attorney she could retire anyway, and left the office when the lawyer replied it was her

decision,

6.    Ms. Lofton did not accept the settlement offer, and lost the appeal.

7.    In the Superior Court lawsuit, Ms. Lofton claims that K&S should have explained to her

the full implications of rejecting the settlement offer.

8.    For her damages lawsuit, Ms. Lofton obtained from the USAID a declaration of one Karla

Yeakle, Exhibit A, describing the benefits she will receive when she turns 62, and what

benefits she would have received had she accepted the governments settlement offer. Ms.

Lofton's economic expert has opined as to the present value of the lost benefits.

9.    The undersigned has moved to have Ex A admitted at trial.

10.    K&S's counsel opposes this request, Ex B, and has moved in limine to exclude Ms.

Yeakle's declaration as evidence, as well as to exclude any expert testimony based on it.

Ex C.[1]

11.    In early September 2006, the undersigned requested from Paul St. Hillaire, that Ms.
       Yeakle testify at trial. Mr. Hillaire denied this request and referred the undersigned to
       AUSA Blumberg.

12.    On September 21, 2006, the undersigned, with the government's consent, served a trial
       subpoena requesting Ms. Yeakle's appearance at the trial on October 30 2006.

13.    AUSA Blumberg declined, cited the Houston Business Journal case, 86 F.3d 1208, 1211-
       12 & N.4., the lack of fees tendered with the subpoena, and the agency regulations
       requiring a judge to sign a subpoena requesting records subject to the Privacy Act, and
       under the claim the Declaration was sufficient. Ex D.[2]

LAW

I.    The Refusal of USAID to produce Ms. Yeakle for trial constitutes an agency decision
      under the Administrative Procedures Act, which decision is arbitrary and capricious.

      Under Touhey, a state-court litigant may not obtain a subpoena ad testificandum against

an employee of a federal agency, such as USAID, that has enacted a Touhy regulation. See,

Houston Business Journal v. Office of Comptroller of Currency, 86 F.3d 1208 (DC Cir. 1996).

In that situation, the litigant must proceed under the APA, and the federal court will review the

agency's decision not to permit its employee to testify and an "arbitrary and capricious" standard.

---

[1] Inasmuch as the arguments in Ex C are not fundamentally different from those set forth
in Ex B, only the Motion, and not the Memorandum of Law of Ex C are attached.

[2] Inasmuch as AUSA Blumberg consented to service via fax, his claim the fees necessary
were not tendered is specious; clearly if this court grants the relief requested, the check will be
tendered. Moreover, as Ms. Lofton herself is requesting her own records, there is no need for a
judge to sign the subpoena.

Id at Fn 4.

In the present case, the statute governing the standard by which the USAID should assess the production of Ms. Yeakle at trial is the "Housekeeping Statute," 5 U.S.C. § 301, which provides:

> The head of an Executive department ⋯ may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. <u>This section does not authorize withholding information from the public or limiting the availability of records to the public</u>

(emphasis added).

Ms. Lofton made the request upon the USAID to produce Ms. Yeakle at trial. The USAID denied that request. She now seeks review of that decision in this court.

This Court should compel the attendence of Ms. Yeakle at trial because the refusal to comply with the subpoena was arbitrary and capricous under the APA, and because Ms. Lofton will not be able to obtain a fair trial without it.

Ms. Yeakle's testimony is vital to Ms. Lofton's case. The defendant has moved to exclude not only her Declaration, but also any expert testimony based on it. See Exhibits C and D. As the housekeeping statute note, the right of the USAID to withhold records does not mean it can withhold information from the public.

As Ms. Yeakle's testimony is vital to Ms. Lofton's case, the USAIDs refusal to produce her for trial was arbitrary and capricious and should be overturned.

II.     Pursuant to <u>Houston Business Journal</u> Ms. Lofton asks that a writ of mandamus be issued directing the head of the USAID to produce Ms. Yeakle for trial.

<u>Houston Business Journal</u> also opined that "it may also be possible for the litigant to bring an action in federal court for mandamus against the agency head". Id at fn 5.

A writ of mandamus shall be issued against a federal official who has failed to comply with a clear duty. <u>In re Boeh</u>, 25 F.3d 761, 764, n.3. For the reasons articulated above with respect to the APA, the head of USAID has a clear duty to produce Ms. Yeakle for trial.

For these reasons, the petitioner in this action asks that the USAID's determination under the APA that Ms. Yeakle not be produced for trial be overturned, and/or that a writ be issued compelling the head of the USAID to produce Ms. Yeakle at the trial in question.

Respectfully Submitted

Thomas C. Willcox
1020 19th Street, N.W., Suite 400
Washington, DC   20036
(202) 223-0090
DC Bar No. 445135
Fax No. 202 452-0092

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EARLENE D. LOFTON
    Plaintiff,

    v.                              No. 98CV 5629

IRVING KATOR
    Defendant.

### <u>DECLARATION</u>

I, Karla W. Yeakle, hereby depose and say:

1. I currently hold the position of Legal Administrative Specialist (Policy), Retirement Group , Center for Employee & Family Support Policy, Strategic Human Resources Policy Division, United States Office of Personnel Management (OPM).

2. The duties of my position require a knowledge of the procedures to be followed responding to customer correspondence, the administrative appeals procedures, and the establishment of claims for benefits under the Federal Employees Retirement System (FERS), 5 U.S.C. § 8401 *et seq.*, the Civil Service Retirement System (CSRS), 5 U.S.C. § 8331 *et seq.*, and regulations promulgated thereunder, 5 C.F.R. Parts 831, 835, 837, 838, 841, 842, 843, 844, 845, and 846.

3. At the request of the plaintiff's representative, I have reviewed the retirement case file of Earlene D. Lofton and have determined the following:

    a. Earlene Lofton would have been entitled to health benefits under the Federal Employees Health Benefit (FEHB) program if she were to have retired under a discontinued service retirement (DSR) back in 1994. 5 U.S.C. §§ 8336(d) and 8905. It appears that she would be eligible to continue FEHB into retirement as she was continuously enrolled in FEHB from 1979 though 1991. From her last Notification of Personnel Action (SF 50), it appears that she was enrolled in FEHB (Mail Handlers, enrollment code 452) on her removal date. Provided that she did not terminate her FEHB coverage between 1991 and her removal in 1994, she would be eligible to continue her coverage into retirement.

    b. If Ms. Lofton receives a deferred retirement at age 62, she will not be entitled to FEHB coverage.

    c. If Ms. Lofton is eligible for FEHB coverage as an annuitant she is responsible for paying the premiums for her coverage. The cost for her coverage for the year

1994 (the year she could have retired) was $93.10 per month and the Government would have paid $279.31 per month.

d. Once Ms. Lofton begins to receive a retirement annuity she will continue to receive that annuity until the date of her death. In other words, there is no end date.

e. On the retirement application in the case file Ms. Lofton elected to provide a full survivor benefit for her spouse. If she began receiving an annuity in 1994, the current monthly amount of the survivor annuity would be $806.00 and if she receives a deferred annuity in 2009, the estimated monthly amount of the survivor annuity would be $710.00. See Attached Calculations Dated 6/7/06 (3 pages).

f. If Ms. Lofton receives a deferred annuity in 2009, the annuity rate will be $1,184.00 per month. 5 U.S.C. § 8338. If she received a DSR annuity beginning in 1994, her commencing rate would have been $1,032.00 and the rate TODAY would be $1,352.00 based on the Cost of Living Adjustments (COLAs).

## FURTHER DECLARANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Dated at Washington, D.C. this 12 day of July 2006.

Karla W. Yeakle
Retirement Group
Chief of Employee & Family Support Policy
Strategic Human Resources Policy Division
United States Office of Personnel Management

2

```
ADJ: X 249205                                          D    06/07/06          1
CLAIM: A3653535   V: 1                         R.       T  :: 08:08:24
```

================================================================

CASE INPUT

================================================================

```
CASE-NAME: LOFTON              EARLENE
        DOB: 01281947   AGCY: 00           SSN: 000000000
    HB-CODE: 011        CCN:           CHANGE: N
   LI-BASIC: 000    POST-RET: 0   STD-OPT: 0  AOI: 0          FOI: 0
     US-CIT: Y        SEX: F              MAR: Y   SURV-NAME: JOHN    H
  SURV-BASE: ALL      S-DOB: 01021934    S-REL: 2    S-SSN: 242520703
   MIL-CODE: 0      MIL-RET: 0       VOL-CONT: N  AGENCY SCD: 000000
```

--------------------------------------------------------------

```
LINE                                LINE
 NO    DATE    CODE   AMOUNT,MULTIPLIER   NO    DATE    CODE   AMOUNT,MULTIPLIER
001  012847    18    708.00-         005  011093-  01-  29530.00-
002  080166    01                    006  010994-  01-  29990.00-
003  110391    01   27332.00-        007  121894-  23-  31019.53-
004  011292    01   28476.00-        008  121894   23    519.75-
```

================================================================

BRIEF 1:                    COMPUTATION RESULTS

================================================================

| DATE | GROSS | COL % | HB COD | HB DED | BASIC LI | STD OPT | POST RET | AOI | FOI | NET |
|------|-------|-------|--------|--------|----------|---------|----------|-----|-----|-----|
| 12/18/94 | 1032 |     |  |  |  |  |  |  |  | 1032.00 |
| 03/01/96 | 1058 | 2.6 |  |  |  |  |  |  |  | 1058.00 |
| 12/01/96 | 1088 | 2.9 |  |  |  |  |  |  |  | 1088.00 |
| 12/01/97 | 1110 | 2.1 |  |  |  |  |  |  |  | 1110.00 |
| 12/01/98 | 1124 | 1.3 |  |  |  |  |  |  |  | 1124.00 |
| 12/01/99 | 1152 | 2.5 |  |  |  |  |  |  |  | 1152.00 |
| 12/01/00 | 1192 | 3.5 |  |  |  |  |  |  |  | 1192.00 |
| 12/01/01 | 1222 | 2.6 |  |  |  |  |  |  |  | 1222.00 |
| 12/01/02 | 1239 | 1.4 |  |  |  |  |  |  |  | 1239.00 |
| 12/01/03 | 1265 | 2.1 |  |  |  |  |  |  |  | 1265.00 |
| 12/01/04 | 1299 | 2.7 |  |  |  |  |  |  |  | 1299.00 |
| 12/01/05 | 1352 | 4.1 |  |  |  |  |  |  |  | 1352.00 |

```
<82 DEP:                  SCD: 08/01/66   AV SAL:   29276    SURV RATE:   806
    INT:               SICKLV: 00/04/03    FINAL:   29990   INCL VC: NO
>82 DEP:                  MIL:
    INT:                CIVIL: 28/04/17   CONTRIB:   31539    VC RATE:
<90 RED:                TOTAL: 28/08/20                      VC REFUND:
    INT:              POST 56:        UNRED BEN:  15687.05   VC INT:
>90 RED:              PRV RET: 043      RED - AGE:  13464.71  ACC INT:
    INT:              SVC PUR: 0100     RED - DEP:  13464.71  EMP SH:
 CREDIT:               <82 BAL:                  TOT PAID MIL SVC:
<90 BAL:               >82 BAL:        EXC CR:            MIL CONT:
                       >90 BAL:                           MIL DEP:
                                                           M/INT:
                                                           W/INT:

          INSTALLMENT PAYMENTS:        MIL-CODE: NONE      SURV-ELECT:
  TYPE-SEPARATION: INVLNTRY           MIL-RET: NOT INVLVD   S-REL: HUSBAND
```

Rates if elig to retire on 12/18/94 (DSR)

Rate on July 1995 = $1,032.00

A-3

**United States**
**Office of Personnel Management**
**Retirement Services Program**
**Washington, DC 20415**

Name: I ofton

Claim number: a3653535

Date: June 7, 2006

Adjudicator:

| From | To | Time at Each Rate | | Gross Annuity Paid | Gross Annuity Due |
|---|---|---|---|---|---|
| 12/18/94 | 02/29/96 = | 14 Months | 13 Days | at $0.00 per month= $0.00 | at $1,039.00 per month= $14,896.20 |
| 03/01/96 | 11/30/96 = | 9 Months | 0 Days | at $0.00 per month= $0.00 | at $1,058.00 per month= $9,522.00 |
| 12/01/96 | 11/30/97 = | 12 Months | 0 Days | at $0.00 per month= $0.00 | at $1,088.00 per month= $13,056.00 |
| 12/01/97 | 11/30/98 = | 12 Months | 0 Days | at $0.00 per month= $0.00 | at $1,110.00 per month= $13,320.00 |
| 12/01/98 | 11/30/99 = | 12 Months | 0 Days | at $0.00 per month= $0.00 | at $1,124.00 per month= $13,488.00 |
| 12/01/99 | 11/30/00 = | 12 Months | 0 Days | at $0.00 per month= $0.00 | at $1,152.00 per month= $13,824.00 |
| 12/01/00 | 11/30/01 = | 12 Months | 0 Days | at $0.00 per month= $0.00 | at $1,192.00 per month= $14,304.00 |
| 12/01/01 | 11/30/02 = | 12 Months | 0 Days | at $0.00 per month= $0.00 | at $1,222.00 per month= $14,664.00 |
| 12/01/02 | 11/30/03 = | 12 Months | 0 Days | at $0.00 per month= $0.00 | at $1,239.00 per month= $14,868.00 |
| 12/01/03 | 11/30/04 = | 12 Months | 0 Days | at $0.00 per month= $0.00 | at $1,265.00 per month= $15,180.00 |
| 12/01/04 | 11/30/05 = | 12 Months | 0 Days | at $0.00 per month= $0.00 | at $1,299.00 per month= $15,588.00 |
| 12/01/05 | 06/30/06 = | 7 Months | 0 Days | at $0.00 per month= $0.00 | at $1,352.00 per month= $9,464.00 |

Other o/p | Owed You Reason

UNDERPAYMENT = $162,173.20
Other overpayment = $0.00
Owed you = $0.00
TOTAL UNDERPAYMENT = $162,173.20

Total Gross Paid = $0.00        Total Gross Due = $162,173.20
TOTAL PAID = $0.00
TOTAL DUE = $162,173.20
UNDERPAYMENT = $162,173.20

accrued annuity payable from 12/18/94   06/30/06 (DSR)

A-4

ADJ: X 249205
CLAIM: A3653535  V: 2                                    T? ?   08:15:28

```
============================================================================
                              CASE INPUT
============================================================================
CASE-NAME: LOFTON           EARLENE
      DOB: 01281947    AGCY: 00          SSN: 000000000
  HB-CODE: 011         CCN:          CHANGE: N
 LI-BASIC: 000    POST-RET: 0  STD-OPT: 0  AOI: 0           FOI: 0
   US-CIT: Y         SEX: F              MAR: Y   SURV-NAME: JOHN   H
SURV-BASE: ALL       S-DOB: 01021934    S-REL: 2       S-SSN: 242520703
 MIL-CODE: 0       MIL-RET: 0        VOL-CONT: N  AGENCY SCD: 000000
----------------------------------------------------------------------------
LINE                                 LINE
 NO   DATE    CODE  AMOUNT,MULTIPLIER  NO   DATE    CODE  AMOUNT,MULTIPLIER
001  080166    01                    005  010994    01   29990.00
002  110391    01   27332.00         006  121894    00
003  011292    01   28476.00         007  012809    21   31019.53
004  011093    01   29530.00         008  012809    21     519.75
============================================================================
BRIEF 1:                   COMPUTATION RESULTS
============================================================================
               COL  HB    HB   BASIC   STD    POST
   DATE    GROSS  %   COD   DED    LI    OPT    RET   AOI   FOI       NET
 01/28/09  1184                                                    1184.00

<82 DEP:            SCD: 08/01/66     AV SAL:  29276    SURV RATE:   710
   INT:         SICKLV:               FINAL:   29990      INCL VC: NO
>82 DEP:           MIL:
   INT:          CIVIL: 28/04/17    CONTRIB:  31539     VC RATE:
<90 RED:         TOTAL: 28/04/17                      VC REFUND:
   INT:        POST 56:       UNRED BEN: 15491.89   VC INT:
>90 RED:       PRV RET: 675       RED - AGE: 15491.89  ACC INT:
   INT:        SVC PUR: 0100     RED - DEP: 15491.89  EMP SH:
 CREDIT:       <82 BAL:                       TOT PAID MIL SVC:
<90 BAL:       >82 BAL:          EXC CR:         MIL CONT:
               >90 BAL:                          MIL DEP:
                                                   M/INT:
                                                   W/INT:

       INSTALLMENT PAYMENTS:     MIL-CODE: NONE         SURV-ELECT:
 TYPE-SEPARATION: VOLUNTRY        MIL-RET: NOT INVLVD    S-REL: HUSBAND
============================================================================
 ANNUITY BEGINS MORE THAN 45 DAYS IN FUTURE              A25

 EXAMINER_____    DATE_____  REVIEWER_____   DATE_____

 _____ FULL REVIEW         _____ CURSORY REVIEW        _____ NO REVIEW
```

Deferred at age 62

A-5

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

*Pleadings* II

| | |
|---|---|
| KATOR & SCOTT, CHARTERED | |
|     Plaintiff/Counter-Defendant | CIVIL ACTION NO: 98-005629 |
| v. | CALENDAR NO: 8 |
| EARLENE LOFTON | JUDGE Russell F. Canan |
|     Defendant/Counter-Plaintiff | |

## OPPOSITION TO MOTION FOR ADMISSION OF DECLARATION OF EMPLOYEE OF THE OFFICE OF PERSONNEL MANAGEMENT

Plaintiff/Counter-Defendant Kator & Scott, Chartered, by and through undersigned counsel and pursuant to SUPER. CT. CIV. R. 12-I(e), hereby opposes Defendant/Counter-Plaintiff Earlene Lofton's Motion for Admission of Declaration of Employee of the Office of Personnel Management. In support of its opposition, Kator & Schott, Chartered submits the attached Memorandum of Points and Authorities, which is incorporated herein by reference.

WHEREFORE, Plaintiff/Counter-Defendant Kator & Scott, Chartered respectfully requests this Court to deny Defendant/Counter-Plaintiff Earlene Lofton's Motion for Admission of Declaration of Employee of the Office of Personnel Management.

Respectfully submitted,

_____, Jr. (#395048)

D WOLF, P. C.

W., Suite 3:0

20009-1125

Alfred L. Scanlan, Jr.

E. ___ ___ ___ N A N    )
200' ___ Str___ ,                    ___
W.ash___gt___ , ___ ___    ___ ___
(202___ ___57-1 ___
*Attorney f___ r ___ ___ur ___ ___ Counter-Defendant*
*Ku___ or ___ ___ ___ ___ ___ ___ ___ ted*

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

| | |
|---|---|
| KATOR & SCOTT, CHARTERED | |
| Plaintiff/Counter-Defendant | CIVIL ACTION NO: 98-005629 |
| v. | CALENDAR NO: 8 |
| EARLENE LOFTON | JUDGE Russell F. Canan |
| Defendant/Counter-Plaintiff | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO MOTION FOR ADMISSION OF DECLARATION OF EMPLOYEE OF THE OFFICE OF PERSONNEL MANAGEMENT**

Plaintiff/Counter-Defendant Kator & Scott, Chartered (Kator & Scott), by and through undersigned counsel and pursuant to SUPER. CT. CIV. R. 12-I(e), hereby submits its Memorandum of Points and Authorities in support of its Opposition to Defendant/Counter-Plaintiff Earlene Lofton's (Lofton) Motion for Admission of Declaration of Employee of the Office of Personnel Management Employee (Motion), and states as follows.

RELEVANT PROCEDURAL HISTORY

Kator & Scott filed the Complaint against Lofton for outstanding fees on July 27, 1998. Docket No. 98-5629. Lofton, represented at the time by Geraldine Owens[1], filed an answer and counterclaim for legal malpractice on September 3, 1998. Docket No. 98-5629. Lofton's present counsel made his appearance on her behalf in this matter on or about January 12, 2006. Motion for Continuance of Pre-Trial Conference and Trial Date. Prior to that time, the trial for

---

[1] Ms. Owens thereafter represented Lofton in this action until approximately April of 2004 when she withdrew from the representation.

this matter was scheduled for March 6, 2006. Id. In light of the eleventh hour appearance of Lofton's current counsel, the trial for this matter has been continued to October 30, 2006.[2]

At the January 12, 2006 status conference, the Court directed the parties to submit a consent order limiting the scope of discovery and establishing the dates for the pretrial conference and trial. In response to the parties' submission, the Court issued a Consent Order stating in pertinent part: "Defendant/Counter-Plaintiff shall have the right to seek discovery from the Unites States Office of Personnel Management regarding Defendant/Counter-Plaintiff's retirement benefits".

On June 8, 2006, Lofton's counsel first informed undersigned counsel of the existence of a report from the U.S. Office of Personnel Management (OPM) regarding Lofton's alleged pension benefit damages. Email of June 8, 2006 from Willcox to Kilgore, attached hereto as Exhibit 1. That OPM report emanated from the Office of General Counsel for the OPM. Facsimile of June 7, 2006 from St. Hillaire to Willcox, attached hereto as Exhibit 2. On July 17, 2006, Lofton's counsel first identified Karla W. Yeakle as the OPM declarant to testify regarding the OPM report. Email of July 17, 2006 from Willcox to Kilgore, attached hereto as Exhibit 3. The prospective OPM declarant is a different person from the OPM employee who submitted the OPM report. Declaration of Karla W. Yeakle; Exhibit B to Motion for Admission of Declaration of Employee of the Office of Personnel Management; Exhibit 2. The pretrial conference for this matter occurred on July 12, 2006.

ARGUMENT

Lofton seeks to admit the Declaration of Karla W. Yeakle (Yeakle Declaration) based upon several propositions. Lofton first claims that Ms. Yeakle will be unavailable to testify at

---

[2] The trial for this matter was initially rescheduled to July 10, 2006, but due to conflicts of both the Court and counsels in this matter, the trial was further postponed until October 30, 2006.

trial and, consequently, the Yeakle Affidavit satisfies the hearsay exceptions under Rule 804 of the FEDERAL RULES OF EVIDENCE. Lofton also asserts that the Yeakle Declaration fits within the "public records" exception to hearsay prohibitions pursuant to Rule 803(8)(c). Lastly, Lofton proposes that the Yeakle Declaration should be admitted into evidence under the "residual" hearsay exception. Fed. R. Evid. 807 (1997). As Kator & Scott conclusively demonstrates below, each of Lofton's arguments are fatally flawed in multiple respects. Accordingly, this Court should deny Lofton's Motion.

I.    *Ms. Yeakle Is Not an "Unavailable Declarant".*

Lofton seeks to admit into evidence the Yeakle Declaration under Rule 804 of the FEDERAL RULES OF EVIDENCE. Under that rule, a party may present certain specified categories of hearsay where the declarant of the statement sought for admission is unavailable. Fed. R. Evid. 804 (b) (1997). Lofton claims that Ms. Yeakle will "likely" be unavailable because the United States Office of Personnel Management (OPM) has "indicated" to her counsel that "it will seek to quash any trial subpoena", which OPM request will "likely" be granted. Motion for Admission of Declaration of Employee of the Office of Personnel Management Employee, Part II. Lofton not only misstates the applicable test under Rule 804, she also fails to meet that test and, in so failing, implicitly relies upon her personal failures to prosecute her claim with any measure of diligence.

A.    *Lofton Fails to Establish That Ms. Yeakle Will Not Be Available For Trial.*

In seeking the Yeakle Declaration's admission, Lofton relies without reservation on an OPM employee's statement that the OPM will seek to quash any trial subpoena of Ms. Yeakle[3]

---

[3] Lofton fails to state whether OPM's position applies simply to Ms. Yeakle or if it covers all OPM employees. Lofton also neglects to identify why she seeks to subpoena Ms. Yeakle rather than any other OPM employee with the same knowledge or skills as Ms. Yeakle. If OPM's position only regards Ms. Yeakle, and if there are other OPM employees who could adequately replace Ms. Yeakle for Lofton's purposes, then Lofton has evidently failed

pursuant to the *Touhy* doctrine.  Motion for Admission of Declaration of Employee of the Office of Personnel Management Employee, Part II.  Lofton's counsel additionally states that he is "proceeding" with the service of a trial subpoena.  Motion for Admission of Declaration of Employee of the Office of Personnel Management Employee, p. 6. n.6.  However, blind faith and unsubstantiated promises do not suffice to carry Lofton's burden under Rule 804.

"Before the hearsay exceptions under Rule 804 become applicable, subdivision (a) of the rule requires that the declarant whose statement is sought to be introduced be unavailable as a witness." United States v. Lang, 589 F.2d 92, 95 (2nd Cir. 1978).  Under Rule 804(a), a declarant is "unavailable" if that person

> (1) is exempted by ruling of court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite a court order to do so; or (3) testifies to a lack of memory of the subject matter of the declarant's statement; or (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or (5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4) the declarant's attendance or testimony) by process or other reasonable means.

Fed. R. Evid. 804 (a) (1997).  The proponent of a Rule 804 statement bears the burden of demonstrating the unavailability of the declarant.  Feaster v. United States, 631 A.2d 400, 407 (D.C. 1993), *citing, inter alia,* Ohio v. Roberts, 488 U.S. 56, 74-75 (1980).  To satisfy that burden, a party must show that the declarant could not be produced for testimony at trial despite a "good faith effort".  Jones v. United States, 441 A.2d 1004, 1007 (1982), *citing, inter alia,* Ohio v. Roberts, supra, at 74.  The measures that must be taken to establish a "good faith effort" are a question of reasonableness.  Id.

---

to make a good faith effort to procure an OPM witness to testify in this matter as required by District of Columbia and Federal case law.

Lofton clearly implicates Rule 804(a)(1) in asserting the OPM's prospective use of the *Touhy* doctrine to shield its employees from a subpoena.[4] However, Lofton's mere regurgitation of OPM's alleged "intentions" and her unfulfilled "promise" to serve a subpoena on Ms. Yeakle do not suffice for "good faith efforts". See United States v. Perez, 963 F.2d 314, 316 (10th Cir. 1992). Even if Lofton does serve a subpoena upon Ms. Yeakle[5], her reliance on OPM's plan to challenge the subpoena under the *Touhy* doctrine is insufficient to carry her burden. See United States v. Pelton, 578 F.2d 701, 709-710 (8th Cir. 1978) (rejecting defendant's reliance on the declarant's attorney's statement that he would advise the declarant to invoke her Fifth Amendment privilege if served with a subpoena, in the absence of any indication that the declarant had been so advised or that the declarant would in fact invoke the privilege, as an inadequate showing under Rule 804(a)(1)).

Even if Lofton's blind reliance on OPM's intentions is justified, OPM's prospective challenge of any trial subpoena of Ms. Yeakle is far from certain to succeed. The facts of this matter are easily distinguishable from those in United States ex. rel. Touhy v. Regan, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). In *Touhy*, a Department of Justice (DOJ) employee

---

[4] Ms. Yeakle has not refused to testify in this case in face of an Order, whether made orally or committed to paper, from this Court. Fed. R. Evid. 804 (a)(2)(1997); United States v. Zappola, 646 F.2d 48 (2nd Cir. 1981); United States v. Bizzard, 674 F.2d 1382 (11th Cir.), cert. denied, 459 U.S. 973, 103 S.Ct. 305, 74 L.Ed.2d 286 (1982); Jennings v. Maynard, 946 F.2d 1502 (10th Cir. 1991). Ms. Yeakle has not testified in this matter to a lack of memory of the subject matter of the Yeakle Declaration. Fed. R. Evid. 804 (a)(3) (1997). Indeed, neither Ms. Yeakle nor any other OPM employee has testified at all in this action. There is no indication in the record or anywhere else that Ms. Yeakle has died or suffers from a physical or mental condition such as to prevent her from testifying at trial. Fed. R. Evid. 804 (a)(4) (1997). Even if Lofton asserted Rule 804(a)(5) as the basis for Ms. Yeakle's unavailability, which she did not, her "effort" in simply asking OPM, unquestionably accepting its promise to invoke the *Touhy* doctrine to quash any subpoena, and "promising" to serve a subpoena on Ms. Yeakle, of which subpoena there is no evidence, utterly fails to meet the "relatively high good faith standard" for seeking to secure the presence and testimony at trial of the declarant, especially considering that the statements in the Yeakle Declaration form the sole basis for her damages claims. Fed. R. Evid. 804 (a)(5); see United States v. Mann, 590 F.2d 361, 367 (1st Cir. 1978). Ms. Lofton has also failed to claim that she invoked "other reasonable means" besides a subpoena to obtain the declarant's attendance and testimony at trial. See Mann, supra. Assuming *arguendo* that Lofton intended to invoke Rule 804(a)(5) as well as Rule 804(a)(1), Kator & Scott's argument in Part I.A, supra, applies with equal force to the former.

[5] As previously stated, Lofton's counsel made known his intention to serve a subpoena but has evidently not served any such subpoena on Ms. Yeakle. See n. 4, supra.

-7-

refused to provide documents in response to a subpoena *duces tecum*, which refusal was based on a DOJ Attorney General order that was promulgated under direct statutory authority. Id. at 467-468. Here, Ms. St. Hillaire, an attorney in the Office of General Counsel to the OPM, has allegedly stated to Lofton's counsel merely his intention to seek to quash any trial subpoena of Ms. Yeakle based upon *Touhy* and not based upon an OPM or other executive order promulgated directly pursuant to statutory authority. Motion for Admission of Declaration of Employee of Office of Personnel Management, at ¶ 12. Importantly, the OPM is not a party to this action where as the DOJ was a party in *Touhy*. See, e.g., Bailey v. Lockheed Martin Corp., 2006 U.S. Dist. LEXIS 47180, * 5-6 (S.D. Miss) ("In *Touhy* and *Reynolds*, the government was a party; it is not entirely clear that the rationale of those cases would apply to a lawsuit in which the agency [...] is not a litigant"). *Touhy* provides no factual basis for the OPM to successfully quash a subpoena of Ms. Yeakle.

Moreover, the *Touhy* doctrine has been substantially eviscerated. Just a year or so after the *Touhy* decision, the Supreme Court curtailed the reach of *Touhy* in United States v. Reynolds, 345 U.S. 1, 9-10, 73 S.Ct. 528, 97 L.Ed. 727 (1953) ("Judicial control over the evidence of a case cannot be abdicated to the caprice of executive officers"). Additionally, the "Housekeeping Statute", which was the relevant statutory authority in *Touhy*, was subsequently amended to add the following language: "This section does not authorize withholding information from the public or limiting the availability of records to the public." Bailey, supra, at *5; 5 U.S.C. § 301 (1966). *Touhy*'s scope remains an open question.

The OPM's putative attempt to successfully quash a trial subpoena of Ms. Yeakle is far from certain to succeed. Until Lofton actually serves a subpoena on Ms. Yeakle and challenges whatever arguments OPM submits to quash that subpoena, Ms. Yeakle's unavailability at trial

pursuant to *Touhy* cannot be determined. This Court should, therefore, reject Lofton's claim that Ms. Yeakle is "unavailable" for purposes of Rule 804 of the FEDERAL RULES OF EVIDENCE.

B.    *Lofton Is Seeking to Benefit From Her Own Failures.*

Notwithstanding the other bases for unavailability, Rule 804(a) precludes a finding that a declarant is "unavailable" where the party seeking to procure the declarant's testimony renders that declarant unavailable through its own actions. Fed. R. Evid. 804 (a) (1997). Lofton filed her counter-claim in this matter on or about September 1, 1998. Except for a period of twenty months out of almost eight years, she has been represented by counsel in this action. However, Lofton waited until July 12, 2006 to procure the Yeakle Declaration and seeks its introduction at trial. To the extent that Lofton claims that a lack of time prevents her from securing Ms. Yeakle's attendance and testimony at trial[6], she alone has created her own problem and, therefore, should be prevented from introducing the Yeakle Declaration as evidence at trial under Rule 804(a).

C.    *Lofton Fails To Claim an Applicable Hearsay Exception.*

Assuming *arguendo* that Ms. Yeakle is "unavailable" within the meaning of Rule 804(a), Lofton must still fit the Yeakle Declaration within one of Rule 804(b)'s enumerated exceptions to the hearsay prohibition. Lofton completely neglects this prong. *Ipso facto*, the Yeakle Declaration cannot be admitted under Rule 804.

i.    *Lofton Identifies No 804(b) Exception.*

Lofton's argument lacks a dispositive element: an actual exception to the hearsay exclusionary rule. The hearsay exceptions provided by Rule 804 are explicitly laid out in subpart (b). Lofton does not claim any of those exceptions. Therefore, the Yeakle Declaration cannot be admitted into evidence by way of Rule 804.

---

[6] Kator & Scott incorporates herein by reference the "Relevant Procedural History", <u>supra</u>.

ii.    *No 804(b) Exception Applies.*

Rule 804(b) provides five types of hearsay exceptions for unavailable declarants: (1) former testimony; (2) statements under the belief of impending death; (3) statements against interest; (4) statements of personal or family history; and (5) statements of wrongdoing in procuring the unavailability of a witness. Fed. R. Evid. 804(b) (1997). Even if Lofton actually claimed a Rule 804(b) exception, the Yeakle Declaration would not suffice for that exception.

The Yeakle Declaration does not constitute "former testimony" per Rule 804(b)(1). Ms. Yeakle has not given the testimony stated in her declaration as a witness at another hearing of this or any other known proceeding. Fed. R. Evid. 804(b)(1) (1997). Notwithstanding Lofton's suggestion[7], the Yeakle Declaration is not testimony that Ms. Yeakle gave in a deposition *taken in compliance with the law* for this or any other known proceeding. Id. Kator & Scott has not and will not have the opportunity to depose or speak with Ms. Yeakle as, according to Lofton, she is only available through Paul St. Hillaire, an attorney in the OPM's Office of General Counsel. Motion for Admission of Declaration of Employee of the Office of Personnel Management, at ¶ 13, p. 3.

The remaining exceptions are patently irrelevant to the Yeakle Declaration. As previously stated, there is no indication that Ms. Yeakle is dead or that she concocted her declaration at a time when she believed that death was imminent. Fed. R. Evid. 804(b)(2) (1997). Ms. Yeakle proffers no statement in her declaration that could harm her or any interest of hers or subject her to any liability[8]. Fed. R. Evid. 804(b)(3) (1997). Further, the statements in the Declaration in no way relate to Ms. Yeakle's personal or family history. Fed. R. Evid.

---

[7] Motion for Admission of Declaration of Employee of the Office of Personnel Management at note 8.
[8] As Kator & Scott will show in Part III.A, infra, Ms. Yeakle makes inaccurate statements in her declaration, which, in a hyperbolic sense, could present her with problems in light of her affirmation. However, there is no reason to believe that Ms. Yeakle did not fully believe those statements upon making the same.

804(b)(4) (1997). Ms. Yeakle's statements in her declaration do not imply any wrongdoing by Lofton, and therefore do not satisfy for the hearsay exception in Rule 804(b)(6). Fed. R. Evid. 804(b)(6) (1997).

WHEREFORE, this Court should preclude the Yeakle Declaration from being admitted into evidence at trial under Rule 804 of the FEDERAL RULES OF EVIDENCE.

II.    *The Yeakle Declaration Is Not an Admissible "Public Record".*

Lofton also seeks the entrance of the Yeakle Declaration under the "public records" exception to the hearsay prohibition pursuant to Rule 803(8)(c) of the FEDERAL RULES OF EVIDENCE. In so doing, Lofton mistakenly presumes that the District of Columbia follows the federal rules regarding the admission of such "public records". Moreover, the Yeakle Declaration does not satisfy the federal "public records" exception. In any event, the Yeakle Declaration is rife with indicia of untrustworthiness and therefore, should not be admitted into evidence as a hearsay exception.

A.    *The Yeakle Declaration Is Not a "Public Record" Under District of Columbia Law.*

The District of Columbia has long recognized a "public records" exception to the hearsay exclusionary rule. Goldsberry v. United States, 598 A.2d 376 (D.C. 1991). However, that exception differs from the "public records" exception under Rule 803(8)(c) of the FEDERAL RULES OF EVIDENCE. Moreover, the District of Columbia has long analyzed the "public records" hearsay exception in a manner different from the federal rule. See, generally, Levin v. Green, 106 A.2d 136 (D.C. 1954) and Emmet v. American Ins. Co., 265 A.2d 602 (D.C. 1970).

In order to satisfy the District of Columbia "public records" exception, a party seeking to introduce a document under that exception must: (1) authenticate the document as an official record of the governmental body at issue; (2) "prove that the *facts stated in the document are*

*within the personal knowledge and observation of the recording official*"; and (3) prove that "the document is prepared pursuant to a duty imposed by law or implied by the nature of the office." Goldsberry, supra, at 378 (internal quotations and citations omitted)(emphasis added).  Rule 803(8)(c), on the other hand, only requires a party to show that the document contains factual findings and that it is based on an investigation made pursuant to legal authority.  Fed. R. Evid. 803(8)(c) (2000); Bridgeway Corp. v. Citibank, 201 F.3d 134, 143 (2nd Cir. 2000).  There is no "personal knowledge and observation" requirement for the official preparing the public record or report under Rule 803(8)(c).  Fed. R. Evid. 803(8)(c) (2000); Robbins v. Whelan, 653 F.2d 47, 52 (1st Cir.), *cert. denied*, 454 U.S. 1123, 71 L.Ed.2d 110, 102 S.Ct. 972 (1981).  Further, the District of Columbia rule does not provide the rebuttal argument that the document contains indicia of untrustworthiness, which counter-argument is expressly permitted by the federal rule.  Compare Goldsberry v. United States, supra, with Fed. R. Evid. 803(8)(c) (2000).  Since Lofton has not identified the correct standard, the Yeakle Declaration should be rejected as a "public records" exception to the hearsay exclusionary rule.

Even if Lofton cited the correct standard, the Yeakle Declaration does not satisfy that standard.  Accepting Ms. Yeakle's absence at trial, Lofton has not identified any OPM official to authenticate the Yeakle Declaration as an "official public record".  See Joint Pretrial Statement.  On this basis alone, the Yeakle Declaration is inadmissible.  Further, Lofton has presented no evidence that Ms. Yeakle prepared her declaration "pursuant to a duty imposed by law or implied by the nature of the office."  See Goldsberry, supra, at 378.  In fact, Ms. Yeakle simply claims that she reviewed Lofton's retirement case file "[a]t the request of the plaintiff's representative", and not pursuant to any duty.  Declaration of Karla W. Yeakle, Exhibit B to Motion for Admission of Declaration of Employee of the Office of Personnel Management.  Ms. Yeakle

makes no representation whatsoever to the any duty on which she relied in preparing her declaration. Id. Lofton conclusively fails to meet the first and third requirements of the "public records" exception to the hearsay exclusion under District of Columbia law.

Notwithstanding, the Yeakle Declaration is replete with surmises, suppositions and non-facts. Ms. Yeakle states that Lofton "*would* have been entitled to health benefits [...] *if* she were to have retired under a discontinued service retirement (DSR) back in 1994." *Exhibit B to Motion for Admission of Declaration of Employee of the Office of Personnel Management* (emphasis added). Ms. Yeakle continues to employ conditional and conjectural language throughout her declaration: "*[i]f* Ms. Lofton receives a deferred retirement at age 62"; "[i]t *appears* that she would be eligible to continue FEHB into retirement"; "it *appears* that she was enrolled in FEHB [...] on her removal date; "*[p]rovided that* she did not terminate her FEHB coverage between 1991 and her removal date in 1994"; "*[i]f* Ms. Lofton is eligible for FEHB coverage as an annuitant"; and "*[i]f* Ms. Lofton receives a deferred annuity in 2009". Id. (emphasis added). In fact, almost all of Ms. Yeakle's factual statements are directly premised on her conditional assertions. Id. Lofton has failed to carry her burden in proving the second requirement of the District of Columbia's "public records" exception to the hearsay rule. See Goldsberry, supra, at 378.

Lofton has utterly failed to show that the Yeakle Declaration qualifies as a "public record" for purposes of the District of Columbia's relevant hearsay exception. This Court should, therefore, deny Lofton's Motion.

B.    *The Yeakle Declaration Is Not a "Public Record" Under Federal Law.*

Assuming a*rguendo* that the District of Columbia recognized Rule 803(8)(c) of the FEDERAL RULES OF EVIDENCE verbatim, the Yeakle Declaration does not suffice as a "public

record" under that rule. Irrespective of the fact that Lofton fails to carry her burden to show that Ms. Yeakle's assertions constitute "factual findings" or that Ms. Yeakle acted "pursuant to authority granted by law" in conducting the investigation identified in her declaration[9], Bridgeway Corp. v. Citibank, 201 F.3d at 143, indications of untrustworthiness are rampant throughout the Yeakle Declaration.

When assessing the trustworthiness of a factual report, the Court looks to: "(a) the timeliness of the investigation; (b) the special skills or experience of the official; (c) whether a hearing was held and the level at which it was conducted; and (d) possible motivation problems. Bridgeway Corp., supra, citing Fed. R. Evid. 803(8)(c) Advisory Committee's note. Applying the Yeakle Declaration to that standard, it is clear that Ms. Yeakle's declaration is not sufficiently trustworthy to merit admission into evidence at trial.

i.    The "Timeliness" of the Yeakle Declaration Impugns Its Trustworthiness.

The Yeakle Declaration was not only created concurrent with this action, but was prepared specifically for this action. Compare Robbins v. Whelan, 653 F.2d at 50, cert. denied, 454 U.S. 1123, 71 L.Ed.2d 110, 102 S.Ct. 972 (finding a Department of Transportation report trustworthy based on, inter alia, the fact that the report was "completely unrelated to [that] or other litigation). Additionally, the Yeakle Declaration can only be described as a "one time" report.    See Bridgeway Corp., 201 F.3d at 431 (in finding a State Department report "trustworthy", the court noted, inter alia, that the report is one which is "submitted annually, and [...] therefore investigated in a timely manner"). The fact that this report only relates to Lofton's pension benefits, as opposed to federal employees' pension benefits in general, also erodes its trustworthiness. Id. ("Rule 803(8) is based upon the assumption that [...] public inspection to which many records are subject will disclose inaccuracies"). In short, the Yeakle Declaration

---

[9] Kator & Scott incorporates herein by reference its argument Part II.A, supra.

was made in the absence of any outside review purely for the purpose of aiding Lofton's claim, and, thereby, lacks the trustworthiness required under Rule 803(8)(c).

ii.    *Ms. Yeakle's Relevant Skills and Experience Are Unknown And Apparently Insufficient.*

There is no indication that Ms. Yeakle has any experience or special skills with respect to the determination and computation of Lofton's pension benefits. Exhibit B to Motion for Admission of Declaration of Employee of the Office of Personnel Management. While Ms. Yeakle's title includes the moniker "specialist", she might have just recently obtained that position or title. Id. Her mistaken citation of "relevant" statutory references strongly suggests that her tenure has been very brief and puts into questions her ability to accomplish that which Lofton requested. For example, in claiming that Lofton will receive a deferred annuity in 2009 of $1,184.00 per month, Ms. Yeakle cites 5 U.S.C. § 8338, which simply states that an employee who is separated from service after five years of service is entitled to an annuity at the age of sixty-two (62) years. Id.; 5 U.S.C. § 8338(a) (1994). There is no reference to any computation or other information on which Ms. Yeakle could or did rely in arriving at the asserted value for Ms. Lofton's monthly pension benefit distributions.

The correct and only statutory section relevant in determining a federal employee's annuity is 5 U.S.C. § 8339 (2002). Incredibly, this section is *not cited at all* in the Yeakle Declaration. Exhibit B to Motion for Admission of Declaration of Employee of the Office of Personnel Management. The formula for computing Lofton's annuity involves several different determinations and mathematical applications, a mistake in any one of which can substantially skew the results. 5 U.S.C. § 8339(a) (2002). Since Ms. Yeakle appears to pull her numbers out of a hat[10], there is no basis to assess the validity or accuracy of those asserted values. See Beech

---

[10] "Factual finding includes not only what happened, but how it happened, why it happened, and who caused it to happen." Bridgeway Corp., 201 F.3d at 143.

Aircraft Corp. v. Rainey, 488 U.S. at 169 (Rule 803(8)(c) requires that statements in reports not

based on factual investigation be barred and that the court make a determination as to whether

the report *or any portion thereof* is sufficiently trustworthy to be admitted).

Ms. Yeakle asserts other unsupported claims as well. For example, she states that "if

Lofton is eligible for FEHB coverage...[t]he cost for her coverage for the year 1994 [...] was

$93.10 per month and the Government would have paid $279.31 per month. Ms. Yeakle cites no

authority or other source of information for this knowledge. Surely, this knowledge is not

intuitive, even for a "specialist" in the OPM. Without any corroborating reference, there are no

means to check the validity or accuracy of this or any other unsupported claims, which are

necessary rendered untrustworthy. If Ms. Yeakle seeks to alter her report to correct any of the

noted deficiencies, she will only confirm the untrustworthiness of her declaration. See City of

New York v. New York Transit Authority, 622 F.2d 910, 914 (2nd Cir. 1981)(in finding a federal

agency report inadmissible hearsay, the court noted that the report was interim, subject to

revision and review, and therefore, did not constitute the "findings" of an agency as expressly

required by Rule 803(8)(c)).

iii.    *Other Indications of Untrustworthiness.*

Since the Yeakle Declaration was directed solely to Lofton's pension benefits and was

prepared only in response to Lofton's request, no hearing on that matter was necessary. See City

of New York, supra, at 915. Consequently, the public had no reason to nor did the public inspect

the Yeakle Declaration to ensure its accuracy. See Bridgeway Corp., 201 F.3d at 431. For

purposes of the Yeakle Declaration, Kator & Scott is the public and, as noted above, has

identified several inaccuracies in addition to myriad other deficiencies clearly showing that

declaration to lack trustworthiness.

Further, there is no indication as to what, if any, procedures Ms. Yeakle followed in creating her declaration or the conclusions therein. See Robbins v. Whelan, 653 F.2d at 51 (in finding a Department of Transportation report trustworthy, the court noted, *inter alia*, that the "government agency has by rule established detailed standards by which the private parties are to collect the required data" and that the "government agency requires an extremely strict statistical standard in addition to" other applied testing standards); Ellis v. Int'l Playtex, Inc., 745 F.2d 292, 301 (4th Cir. 1984) (in determining that a Center for Disease Control report admissible under Rule 803(8)(c), the court notes that, *inter alia*, "both the CDC and the state health departments use uniform procedures and methods in their epidemiology studies that are widely accepted by their peers. Data is not reported [...] unless it is statistically significant").

Lastly, the Yeakle Declaration's affirmation seems to provide for and possibly anticipate inaccuracies in the declaration. Ms. Yeakle "declares under penalty of perjury that the [declaration] is true and correct *to the best of [her] knowledge and belief.*" Exhibit B to Motion for Admission of Declaration of Employee of the Office of Personnel Management (emphasis added). Lofton claims that Ms. Yeakle's declaration is comparable to a sworn affidavit and, consequently, is admissible pursuant to 28 U.S.C. § 1746. Motion for Admission of Declaration of Employee of the Office of Personnel Management, Part I, p. 4. The plain language of that statue, as Lofton identifies, permits an unsworn declaration to meet any requirement for a sworn affidavit or the like if that declaration "substantially" states: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746(2) (1976). As evidenced above, in the Yeakle Declaration, and in Lofton's Motion, Ms. Yeakle's declaration does not conform.

Instead of swearing that the information is true and accurate, Ms. Yeakle qualifies her "oath" by her limited "knowledge and belief" at the time she affirmed her declaration. If she is in fact inaccurate in any of her statements but did not know or believe that she was inaccurate, she does not violate her "affirmation". An "affirmation" such as in the Yeakle Declaration actually encourages the affirmant to avoid due diligence so as to insulate him or herself from a perjury charge for affirming inaccurate statements. Therefore, her declaration is inherently unreliable based solely upon her affirmation.

WHEREFORE, this Court should preclude the Yeakle Declaration from being admitted into evidence at trial under the District of Columbia's "public records" exception to the hearsay exclusionary rule or under Rule 803(8)(c) of the FEDERAL RULES OF EVIDENCE.

III.    *No Other Hearsay Exception Applies.*

Lofton lastly relies upon Rule 807 of the FEDERAL RULES OF EVIDENCE, the residual hearsay exception, in seeking the admission of the Yeakle Declaration. Motion for Admission of Declaration of Employee of the Office of Personnel Management, Part IV, p. 7. Not only does the Yeakle Declaration fail to satisfy the residual hearsay exception, it also constitutes inadmissible hearsay within hearsay. The Yeakle Declaration must accordingly be denied admission into evidence at trial.

A.    *The Yeakle Declaration Does Not Fit Within the Residual Hearsay Exception.*

Hearsay statements under the residual hearsay exception "are presumptively unreliable [...] absent a showing of particularized guarantees of trustworthiness." United States v. Brooks, 48 F.3d 954, 961 (8th Cir. 1995), *citing, inter. alia*, Idaho v. Wright, 497 U.S. 805, 818, 111 L.Ed.2d 638, 110 S.Ct. 3139 (1990), and Ohio v. Roberts, 448 U.S. at 66. In order to qualify a hearsay statement for admission pursuant to Rule 807, a party must show that:

> [the statement has] equivalent guarantees of trustworthiness [to statements covered by Rule 803 or 804 and that ] (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807 (1997).  The party seeking the admission of a hearsay statement under Rule 807 bears the burden of showing each of the above elements.  See Rush v. Illinois Cent. R.R. Co., 399 F.3d 705, 720 (6th Cir. 2005).

Lofton offers conclusory statements but has made absolutely no showing that the Yeakle Declaration meets any one of the Rule 807 requirements.  See Id. (finding that a hearsay statement cannot be admitted pursuant to Rule 807 where the proffering party made no showing that the statement is more probative than other evidence reasonably procurable).  The Yeakle Declaration should be denied admittance on this basis alone.  Nevertheless, the Yeakle Declaration is far from trustworthy as Rule 803 or 804 statements and, irrespective, is not the most probative, reasonably attainable evidence.  Lofton fails to carry her burden and the Yeakle Declarations should be precluded from admission pursuant to Rule 807 of the FEDERAL RULES OF EVIDENCE.

i.      *The Yeakle Declaration Lacks Trustworthiness.*

Kator & Scott incorporates herein by reference its argument in Part II.B, supra.

ii.      *The Yeakle Declaration Is Less Probative Than Other Reasonably Attainable Evidence.*

"The probative value of evidence is its tendency to establish the proposition that it is offered to prove."  United States v. Welsh, 774 F.2d 670, 672 (4th Cir. 1985), *citing* McCORMICK ON EVIDENCE, 3rd Ed. § 185, at 541 (internal quotations omitted).  "Evidence has probative value if it tends to prove the issue in dispute."  Id. (internal quotations and citations

omitted).   Credibility, however, "has nothing to do with whether or not [the evidence] is

probative with respect to the fact which it seeks to prove." United States v. Welsh, 774 F.2d at

672.   It is not enough for evidence to have probative value for admission per Rule 807; the

evidence must be "*more* probative [...] *than any other* evidence which [...] can be procured

through reasonable efforts." Fed. R. Evid. 807 (1997) (emphasis added).

Clearly the Yeakle Declaration is not the most probative evidence of the information

contained therein.   Ms. Yeakle's testimony, if reasonably able to be produced, is far more

probative than her declaration, especially in light of the many infirmities noted above.[11]   Since

Lofton's counsel has not yet attempted to effect Ms. Yeakle's testimony at trial[12], she has failed

to carry her burden to show that other more probative evidence cannot be reasonably obtained.

See Rush v. Illinois Cent. R.R. Co., 399 F.3d at 720; Fed. R. Evid. 807 (1997).

On the contrary, there is evidence that is more probative than the Yeakle Declaration or

even than Ms. Yeakle's testimony, which evidence is reasonably obtainable: Lofton's

"retirement case file"[13].   Ms. Yeakle clearly relies upon those records in asserting the "facts" and

rendering the conclusions stated in the Yeakle Declaration. Exhibit B to Motion for Admission

of Declaration of Employee of Office of Personnel Management.   The purpose[14] of the Yeakle

Declaration is to provide values for the pension benefits and the health benefits that Lofton

would have received in 1994 had she accepted the USAID's settlement offer.   Since Lofton has

---

[11] See Part II, supra.
[12] Lofton's counsel merely states that he is "proceeding" with the service of a subpoena on Ms. Yeakle, without producing any evidence that he has in fact served such a subpoena. Motion for Admission of Declaration of Employee of the Office of Personnel Management, p.6, n. 6. Moreover, Lofton has not claimed that she has tried "other reasonable means to secure Ms. Yeakle's trial testimony. See United States v. Mann, 590 F.2d at 367.
[13] Ms. Yeakle expressly states that to determine the "facts" and conclusions in her declaration, she "reviewed the retirement case file of Earlene D. Lofton". Exhibit B to Motion for Admission of Declaration of Employee of Office of Personnel Management.
[14] The conditional language on which Ms. Yeakle hinges each of her "facts" and conclusions shows that Ms. Yeakle takes no position on, e.g., whether Lofton could have retired under a DSR or whether Lofton was enrolled in FEHB on her removal date. Exhibit B to Motion for Admission of Declaration of Employee of Office of Personnel Management. See n. 12, supra.

an expert economist to calculate the total value of her alleged lost pension and healthcare benefits and since she now has an attorney to apply the relevant law to establish her entitlement, if any, to those benefits, her retirement case file and records therein, which are conspicuously absent from this litigation, would provide the actual evidence she seeks to indirectly obtain through Ms. Yeakle's declaration.

Lofton has not explained why she has not obtained her retirement benefits-related records from the OPM. Lofton has also failed to claim that OPM will not produce those records in lieu of Ms. Yeakle's declaration or testimony. Incredibly, there is no indication that Lofton even requested those records. Lofton fails to carry her burden of showing that evidence more probative than the Yeakle Declaration is not reasonably obtainable. This Court should deny the admission of the Yeakle Declaration pursuant to Rule 807. Fed. R. Evid. 807 (1997).

B.    *The Yeakle Declaration Contains Hearsay Within Hearsay.*

In determining the admissibility of the Yeakle Declaration, this Court must find that each individual statement therein is not hearsay or satisfies some exception to the hearsay exclusionary rule. See, e.g., United State v. Canan, 48 F.3d 954, 960 (6th Cir. 1995); Fed. R. Evid. 805 (1975). Because each of Ms. Yeakle's asserted "facts" and conclusions are based upon inadmissible hearsay, the entire Yeakle Declaration must be denied admission into evidence.

As mentioned above, Ms. Yeakle expressly states in her declaration that she "reviewed the retirement case file of Earlene D. Lofton" in arriving at her "facts" and conclusions. Exhibit B to Motion for Admission of Declaration of Employee of Office of Personnel Management. Lofton has not identified her retirement case file as an exhibit at trial, nor has she provided a copy of that case file to Kator & Scott. Without the physical admission and authentification of

that case file for trial, that case file constituted inadmissible hearsay. Since Ms. Yeakle completely relies upon that hearsay to make her "facts" and conclusions, the entire Yeakle Declaration must be excluded from evidence.

WHEREFORE, this Court should preclude the Yeakle Declaration from being admitted into evidence at trial under the residual hearsay exception or any other hearsay exception pursuant to District of Columbia law and the FEDERAL RULES OF EVIDENCE and related case law.

CONCLUSION

WHEREFORE, Plaintiff/Counter-Defendant Kator & Scott, Chartered respectfully requests this Court to deny Defendant/Counter-Plaintiff Earlene Lofton's Motion for Admission of Declaration of Employee of the Office of Personnel Management Employee.

Respectfully submitted,

Alfred L. Scanlan, Jr. (#395048)
ECCLESTON AND WOLF, P. C.
2001 S Street, N. W., Suite 310
Washington, DC 20009-1125
(202) 857-1696
*Attorney for Plaintiff/Counter-Defendant*
*Kator & Scott, Chartered*

## Timothy Kilgore

| | |
|---|---|
| **From:** | twillcox [xoclliw@yahoo.com] |
| **Sent:** | Thursday, June 08, 2006 1:30 PM |
| **To:** | Timothy Kilgore |
| **Cc:** | Alfred Scanlan |
| **Subject:** | Attached is OPM Analysis; I hope to have expert report within a week |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

☒

Thomas Willcox

-----Original Message-----
**From:** Timothy Kilgore [mailto:Kilgore@ewdc.com]
**Sent:** Wednesday, April 19, 2006 4:18 PM
**To:** tcw19@columbia.edu; Alfred Scanlan
**Cc:** Irving Kator (E-mail)
**Subject:** RE: Lofton v. Kator & Scott

The pretrial conference is now set for Wednesday, July 12 at 4 p.m.

-----Original Message-----
**From:** twillcox [mailto:xoclliw@yahoo.com]
**Sent:** Wednesday, April 19, 2006 4:14 PM
**To:** Timothy Kilgore; Alfred Scanlan
**Cc:** 'Irving Kator (E-mail)'
**Subject:** RE: Lofton v. Kator & Scott

The July Dates are OK and anything except the last two weeks of August. I have in general an open calender from July On.

☒

Thomas Willcox

-----Original Message-----
**From:** Timothy Kilgore [mailto:Kilgore@ewdc.com]
**Sent:** Wednesday, April 19, 2006 3:58 PM
**To:** tcw19@columbia.edu; Alfred Scanlan
**Cc:** Irving Kator (E-mail)
**Subject:** RE: Lofton v. Kator & Scott

Hi Tom:

I've just been informed by Judge Canan's law clerk that he is out of town the entire week of



EXHIBIT
1

8/18/2006



Office of Personnel Management
Office of the General Counsel
1900 E Street, NW
Washington, DC  20415-1300
Voice:  (202) 606-1700
Fax No. (202) 606-0082
          (202) 606-2609

# FAX

| | |
|---|---|
| **TO: Thomas C. Willcox, Esq.** | **From:  Paul St. Hillaire, Esq.** |
| **Fax:   202-452-0092** | **Pages:     4** |
| **Phone: 202-223-0090** | **Date:  June 7, 2006** |
| **Re:   Lofton Retirement Calculations** | **CC:** |

☐**Urgent**     ☐**For Review**     ☐**Please Comment**     ☐**Please Reply**

**Comments:**

**Willcox:**

**The attached calculations are in response to your request, on Ms. Lofton's
behalf, for information concerning her estimated retirement benefits.
According to OPM's records, if Ms. Lofton had accepted her agency's
settlement agreement, she would have been eligible for an involuntary
retirement effective 12/18/94.  Her annuity rate on that date (and on July
1995) would have been $1,032.00 per month.  The accrued annuity due to
her, payable from 12/18/94 through 06/30/06, would be $162,173.20.**

**If Ms. Lofton receives a deferred annuity at age 62, her monthly rate
(effective 01/28/09) will be $1,184.00.**



EXHIBIT
2

```
ADJ: X 249205                                        PAGE: 1
CLAIM: A3653535  V: 1                              8:08:24
```

```
                              CASE INPUT

CASE-NAME: LOFTON          EARLENE
     DOB: 01281947    AGCY: 00           SSN: 000000000
  HB-CODE: 011          CCN:          CHANGE: N
 LI-BASIC: 000     POST-RET: 0  STD-OPT: 0  AOI: 0       FOI: 0
  US-CIT: Y          SEX: F              MAR: Y  SURV-NAME: JOHN    R
SURV-BASE: ALL       S-DOB: 01021934   S-REL: 2    S-SSN: 242520703
 MIL-CODE: 0      MIL-RET: 0           VOL-CONT: N  AGENCY SCD: 000000

LINE                           LINE
 NO    DATE   CODE   AMOUNT,MULTIPLIER   NO    DATE   CODE   AMOUNT,MULTIPLIER
001   012847   18    708.00        005   011093   01-   29530.00-
002   080166   01                  006   010994   01-   29990.00-
003   110391   01    27332.00      007   121894   23-   31019.53-
004   011292   01    29476.00      008   121894   23    519.75-
```

BRIEF 1:                    COMPUTATION RESULTS

| DATE | GROSS | COL % | HB COD | HB DED | BASIC LI | STD OPT | POST RET | AOI | FOI | NET |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/18/94 | 1032 | | | | | | | | | 1032.00 |
| 03/01/96 | 1058 | 2.6 | | | | | | | | 1058.00 |
| 12/01/96 | 1088 | 2.9 | | | | | | | | 1088.00 |
| 12/01/97 | 1110 | 2.1 | | | | | | | | 1110.00 |
| 12/01/98 | 1124 | 1.3 | | | | | | | | 1124.00 |
| 12/01/99 | 1152 | 2.5 | | | | | | | | 1152.00 |
| 12/01/00 | 1192 | 3.5 | | | | | | | | 1192.00 |
| 12/01/01 | 1222 | 2.6 | | | | | | | | 1222.00 |
| 12/01/02 | 1239 | 1.4 | | | | | | | | 1239.00 |
| 12/01/03 | 1265 | 2.1 | | | | | | | | 1265.00 |
| 12/01/04 | 1299 | 2.7 | | | | | | | | 1299.00 |
| 12/01/05 | 1352 | 4.1 | | | | | | | | 1352.00 |

```
<82 DEP:              SCD: 08/01/66   AV SAL:  29276    SURV RATE:   806
    INT:           SICKLV: 00/04/03   FINAL:   29990    INCL VC: NO
>82 DEP:              MIL:
    INT:            CIVIL: 28/04/17  CONTRIB:   31539      VC RATE:
<90 RED:            TOTAL: 28/08/20                      VC REFUND:
    INT:          POST 56:       UNRED BEN:  15687 05  VC INT:
>90 RED:          PRV RET: 043       RED - AGE: 13464.71 ACC INT:
    INT:          SVC PUR: 0100      RED - DEP: 13464.71 EMP SH:
 CREDIT:          <82 BAL:                          TOT PAID MIL SVC:
<90 BAL:          >82 BAL:          EXC CR:              MIL CONT:
                  >90 BAL:                               MIL DEP:
                                                           M/INT:
                                                           W/INT:

      INSTALLMENT PAYMENTS:       MIL-CODE: NONE      SURV-ELECT:
TYPE-SEPARATION: INVLNTRY         MIL-RET: NOT INVLVD     S-REL: HUSBAND
```

*Rates if elig to retire on 12/18/94*

*Rate on July 1995 = $1,032.00*

# United States
## Office of Personnel Management
### Retirement Services Program
### Washington, DC 20415

**Name:** Lofton

**Claim number:** a3653535

**Date:** June 7, 2006

**Adjudicator:** 0

| Time at Each Rate | | | | Gross Annuity Paid | | Gross Annuity Due |
|---|---|---|---|---|---|---|
| From 12/18/94 To 02/29/96 = 14 Months | 13 Days | at | $0.00 per month= | $0.00 | at | $14,895.20 |
| From 03/01/96 To 11/30/96 = 8 Months | 0 Days | at | $0.00 per month= | $0.00 | at | $1,032.00 per month= | $9,522.00 |
| From 12/01/96 To 11/30/97 = 12 Months | 0 Days | at | $0.00 per month= | $0.00 | at | $1,058.00 per month= | $13,056.00 |
| From 12/01/98 To 11/30/97 = 12 Months | 0 Days | at | $0.00 per month= | $0.00 | at | $1,088.00 per month= | $13,320.00 |
| | | | | | at | $1,110.00 per month= | $13,488.00 |
| From 12/01/01 To 11/30/02 = | 0 Days | at | $0.00 per month= | $0.00 | at | $1,124.00 per month= |
| From 12/01/02 To 11/30/03 = | 0 Days | at | $0.00 per month= | $0.00 | at | $1,239.00 per month= | $15,180.00 |
| From 12/01/03 To 11/30/04 = | 0 Days | at | $0.00 per month= | $0.00 | at | $1,265.00 per month= | $1 |
| From 12/01/04 To 11/30/05 = 12 Months | 0 Days | at | $0.00 per month= | $0.00 | at | $1,299.00 per month= |
| From 12/01/05 To 05/30/2006 = 7 Months | 0 Days | at | $0.00 per month= | $0.00 | at | $1,352.00 per month= | $9,464.00 |

**UNDERPAYMENT = $162,173.20**

Other overpayment = $0.00

Owed you = $0.00

**TOTAL UNDERPAYMENT = $162,173.20**

Total Gross Paid = $0.00

Total Gross Due = $0.00

TOTAL PAID = $0.00

TOTAL DUE = $162,173.20

UNDERPAYMENT = $162,173.20

Other o/p    Owed You Reason

accrued annuity payable from 12/18/94 - 06/30/06

accrued annuity payable from 12/18/94

CASE INPUT

```
CASE-NAME: LOFTON          EARLENE
        DOB: 01281947    AGCY: 00              SSN: 000000000
   HB-CODE: 011          CCN:              CHANGE: N
   LI-BASIC: 000     POST-RET: 0  STD-OPT: 0    AOI: 0          FOI: 0
    US-CIT: Y          SEX: F                 MAR: Y    SURV-NAME: JOHN     H
  SURV-BASE: ALL      S-DOB: 01021934        S-REL: 2      S-SSN: 242520703
   MIL-CODE: 0        MIL-RET: 0            VOL-CONT: N   AGENCY SCD: 000000
```

| LINE NO | DATE | CODE | AMOUNT,MULTIPLIER | LINE NO | DATE | CODE | AMOUNT,MULTIPLIER |
|---|---|---|---|---|---|---|---|
| 001 | 080166 | 01 | | 005 | 010994 | 01 | 29990.00 |
| 002 | 110391 | 01 | 27332.00 | 006 | 121994 | 00 | |
| 003 | 011292 | 01 | 28476.00 | 007 | 012809 | 21 | 31019.53 |
| 004 | 011093 | 01 | 29530.00 | 008 | 012809 | 21 | 519.75 |

BRIEF 1:                    COMPUTATION RESULTS

```
              COL  HB    HB   BASIC    STD    POST
  DATE    GROSS  %  COD   DED   LI      OPT    RET    AOI    FOI        NET
01/28/09  1184                                                         1184.00

<82 DEP:                    SCD: 08/01/66   AV SAL: 29276    SURV RATE:    710
    INT:              SICKLV:              FINAL: 29990       INCL VC: NO
>82 DEP:                MIL:
    INT:               CIVIL: 28/04/17   CONTRIB:   31539      VC RATE:
<90 RED:               TOTAL: 28/04/17                       VC REFUND:
    INT:             POST 56:   UNRED BEN:  15491.89    VC INT:
>90 RED:             PRV RET: 675      RED - AGE:  15491.89 ACC INT:
    INT:             SVC PUR: 0100     RED - DEP:  15491.89  EMP SH:
 CREDIT:             <82 BAL:                      TOT PAID MIL SVC:
<90 BAL:             >82 BAL:          EXC CR:         MIL CONT:
                     >90 BAL:                          MIL DEP:
                                                        M/INT:
                                                        W/INT:


        INSTALLMENT PAYMENTS:      MIL-CODE: NONE       SURV-ELECT:
TYPE-SEPARATION: VOLUNTRY          MIL-RET: NOT INVLVD    S-REL: HUSBAND
```

ANNUITY BEGINS MORE THAN 45 DAYS IN FUTURE                A25

```
EXAMINER _____ DATE_____  REVIEWER_____ DATE_____

____ FULL REVIEW          ____ CURSORY REVIEW            ____ NO REVIEW
```

*Deferred at age 62*

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

KATOR & SCOTT, CHARTERED

      Plaintiff/Counter-Defendant

v.

EARLENE LOFTON

      Defendant/Counter-Plaintiff

CIVIL ACTION NO: 98-005629

CALENDAR NO: 8

JUDGE Russell F. Canan

Trial scheduled for October 30, 2006

## PLAINTIFF/COUNTER-DEFENDANT'S MOTION IN LIMINE TO PRECLUDE DEFENDANT/COUNTER-PLAINTIFF FROM PRESENTING CERTAIN CLAIMS AND EVIDENCE

Plaintiff/Counter-Defendant Kator & Scott, Chartered, by and through undersigned counsel, hereby moves to preclude Defendant/Counter-Plaintiff Earlene Lofton from presenting any damage claims related to lost health benefits or her damaged credit rating, from entering the Declaration of Karla W. Yeakle or the attached OPM documents into evidence at trial, and from having her expert witness present any testimony at trial based upon the Declaration of Karla W. Yeakle or the attached OPM Documents. In support of its motion, Plaintiff/Counter-Defendant submits the attached Memorandum of Points and Authorities, which is attached hereto and incorporated by reference herein.

WHEREFORE, Plaintiff/Counter-Defendant respectfully requests this Court to grant its motion and to preclude Defendant/Counter-Plaintiff from presenting any damage claims related to lost health benefits or her damaged credit rating, from entering the Declaration of Karla W. Yeakle or the attached OPM Documents into evidence at trial,

1

and from having her expert witness present any testimony at trial based upon the

Declaration of Karla W. Yeakle or the attached OPM Documents, and to grant to

Plaintiff/Counter-Defendant all other relief this Court deems appropriate.

Respectfully submitted,

Alfred L. Scanlan, Jr. (#395048)
ECCLESTON AND WOLF, P. C.
2001 S Street, N. W., Suite 310
Washington, DC 20009-1125
(202) 857-1696
*Attorneys for Plaintiff/Counter-Defendant*

2

FROM U. S. ATTTORNEY'S    OFFICE    (THU) 10. 5' 06 19:30/ST 9:30/NO. 4861391185 P 2



**U.S. Department of Justice**

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

October 5, 2006

Thomas C. Willcox, Esq.
Attorney at Law
1020 19th Street, N.W., Suite 400
Washington, DC 20036

     Re:    Third-Party Subpoena - Kator, Scott v. Lofton, Sup. Ct. No. 98-CA-5629
             Objections to September 21, 2006 Subpoena

Dear Mr. Wilcox:

     This letter is in reference to the third-party subpoena executed by your office requesting the trial testimony of Karla Yeakle, an employee of the Office of Personnel Management ("OPM"), in the above-referenced matter. By consent, the United States Attorneys Office accepted service of the subpoena by facsimile on September 21, 2006.

     OPM is not required to, and will not, comply with your subpoena. The federal government is shielded by sovereign immunity, which prevents the state court from enforcing a subpoena. See Houston Business Journal v. OCC, 86 F.3d 1208, 1211-12 & n.4 (D.C. Cir. 1996).

     Rule 45(b)(1) of the District of Columbia Rules of Civil Procedure also requires that the party serving the subpoena tender the fees for one day's attendance and the milage allowed by law. To date, no fees have been received by this office.

     OPM also objects to the subpoena in that agency regulations require that if there is to be disclosure of information from a Privacy Act system of records, the subpoena must be signed by a judge. See 5 C.F.R. § 297.402.

     In addition, Rule 45(c) of both the District of Columbia and the Federal Rules of Civil Procedure permit objection where compliance would subject a person to an undue burden. According to the subpoena, Ms. Yeakle is being asked to testify about the matters contained in her July 12, 2006 declaration. It is not uncommon for OPM to receive requests for information concerning benefits calculations for current and former government employees, and for OPM to respond to those requests by providing a sworn declaration. However, to routinely subject OPM employees to depositions or to demand that they be made available for trial testimony would detrimentally impact the agency's ability to perform the services central to its mission, imposing



an undue burden.

If you have any questions regarding this matter, please do not hesitate to contact me at (202) 514-7157.

Sincerely,

JEFFREY A. TAYLOR
United States Attorney

By:

PETER D. BLUMBERG
Assistant United States Attorney

cc:    Paul St. Hillaire, Esq.